UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * * *

United States of America,

        Plaintiff,

vs.                        REPORT AND RECOMMENDATION

Joseph Chris Hernandez,

        Defendant.       Crim. No. 08-198 (JRT/RLE)

* * * * * * * * * * * * * * * * * * * *

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Joseph Chris Hernandez to Suppress Evidence Secured in Violation of the Fourth Amendment [Docket No. 49].[1]

A Hearing on the Motion was conducted on August 4, 2008, at which time, the

---

[1]In addition, the Defendant originally filed Motions to Suppress Evidence Secured in Violation of the Fifth and Sixth Amendments. See, Docket Nos. 50, 51. However, at the Hearing, counsel for the Government advised that he would not introduce the evidence, which is the subject of those Motions, during the Government's case-in-chief. Accordingly, based upon the representations of the parties, we recommend that the Defendant's Motions to Suppress Evidence Secured in Violation of the Fifth and Sixth Amendments be denied, as moot.

Defendant appeared personally, and by Robert J. Kolstad, Esq., and the Government

appeared by Andrew R. Winter, Assistant United States Attorney.  For reasons which

follow, we recommend that the Defendant's Motion be denied.

## II.  Factual Background

The Defendant is charged with one (1) Count of Conspiracy to Distribute

Methamphetamine, in violation of Title 21 U.S.C. §§841(a)(1), 841(b)(1)(A), and 846.

The events which gave rise to those charges are alleged to have occurred from 2005,

through April 30, 2008, in this State and District.  As pertinent to those charges, and

to the Motion now before us, the operative facts may be briefly summarized.[2]

At the Hearing, no testimony was adduced by either party.  Instead, the

Government introduced the following three (3) Exhibits to the Court, with no

objection from the Defendant:  1) a Search Warrant and supporting Affidavit, dated

---

[2]Rule 12(d), Federal Rules of Criminal Procedure, provides that "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record."  See, United States v. Santiago, 410 F.3d 193, 198 (5th Cir. 2005), cert. denied, 126 S.Ct. 1565 (2006).  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion. Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require. See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

April 23, 2008, which was issued by the State District Court for Mille Lacs County, Minnesota, ("Exhibit 1" or the "Grand Casino Mille Lacs Search Warrant"), for the search of financial information, and records at Grand Casino Mille Lacs, in the name of the Defendant; 2) a Search Warrant and supporting Affidavit, dated April 1, 2008, which was issued by the State District Court for Pine County, Minnesota ("Exhibit 2" or "Grand Casino Hinckley Search Warrant"), for the search of financial information and records at Grand Casino Hinckley, in the name of the Defendant; and 3) a Search Warrant and supporting Affidavit, dated September 27, 2007, which was issued by the State District Court for St. Louis County District, Minnesota ("Exhibit 3" or "MetaBank Search Warrant"), for the search of financial account information, and records, in the name of the Defendant at MetaBank, which is located in Sioux Falls, South Dakota.

As noted, the MetaBank Search Warrant was issued by a State Court Judge, in St. Louis County, on September 27, 2007. See, <u>Exhibit 3</u>. The Search Warrant authorized a search for financial account information, and records, being held in the name of the Defendant at MetaBank, in Sioux Falls, South Dakota, including "the type of account, the account number, date of opening, date of closing and associated addresses and telephone numbers for the account holder(s)." <u>Id.</u>, Warrant at 2-1. The

- 3 -

Warrant also authorized a search for "[a]ll financial activity related to Savings, Checking, Credit Card, Debit or Check Card transactions pertaining to the above referenced accounts beginning on January 1, 2005 through the present date," including "the time, date and location of any ATM withdrawal, credit or debit card transactions." Id.

In support of the Search Warrant, John M. Nordberg ("Nordberg"), who is a Special Agent with the Minnesota Bureau of Criminal Apprehension ("BCA"), submitted an Application and Affidavit which set forth the reasons that caused him to believe that evidence of criminal activity would be found in the Defendant's financial records at MetaBank. Id., Application at 1-1. Nordberg averred that, beginning in 2005, while he was employed as a police investigator in Superior, Wisconsin, he began receiving information from confidential informants, who advised that an individual, who was known as "Mexican Joey," or "Joey," was supplying methamphetamine in Duluth, Minnesota, and Superior, Wisconsin. Id., Application at 1-2.

Thereafter, on March 3, 2007, Nordberg reviewed a report from Doug Henning ("Henning"), who is one of his fellow agents at the BCA. Id. According to the report, Henning conducted an interview of Jeffrey James Klink ("Klink"), who advised that

he worked as the "muscle" for the Defendant's methamphetamine business. Id. Klink explained that he collected drug debts, which were owed to the Defendant, and that he delivered methamphetamine to the Defendant's customers, at the Defendant's direction. Id.

Nordberg also averred that, on March 12, 2007, he interviewed Brandon James Polaski ("Polaski"), who identified the Defendant from a driver's license photograph. Id. Polaski informed Nordberg that he initially met the Defendant on October 31, 2006, through Adrian Gray ("Gray"), who had identified the Defendant as his source for methamphetamine. Id. Polaski informed Nordberg that he acquired approximately six (6) ounces of methamphetamine from the Defendant, which Polaski then sold to individuals in the Duluth-Superior area. Id. Polaski also identified several other individuals -- namely, Gray, Justin Curry ("Curry"), Brian Boder ("Boder"), Dean Gossett ("Gossett"), Karen Tremain, Teresa Brissett, John Highland, Robert Opland, Mike Zigler, Donna Brown, Sara Benvie, Shawn Bennett, and "Kevin" -- all of whom obtained methamphetamine from the Defendant. Id.

Some time after the interview of March 12, 2007, Polaski further informed Nordberg that the Defendant was depositing his income from drug deals into an account that he had opened at the Pawn America store in Duluth. Id. According to

Polaski, the Defendant used a cash card or debit card to make use of the account, in order to avoid carrying quantities of cash, and to allow his co-conspirators to deposit money into the account.  Id.

On April 26, 2007, Nordberg reviewed a report from Mike Erickson ("Erickson"), who is an investigator with the Duluth Police Department.  Id. According to the report, Erickson interviewed Curry on March 15, 2007, and Curry identified the Defendant from a photograph.  Id.  During that interview, Curry admitted purchasing between fifteen (15) and twenty (20) pounds of methamphetamine from the Defendant.  Id.

On May 24, 2007, Nordberg reviewed a report from Shawn Padden ("Padden"), who is an investigator with the Hermantown Police Department.  Id., Application at 1-3.  According to the report, Padden interviewed Boder on March 15, 2007, and Boder immediately identified the Defendant from a photograph.  Id.  During the interview, Boder admitted receiving 1.5 pounds of methamphetamine from Gray, and he stated that, in turn, Gray had received the methamphetamine from the Defendant. Id.  Boder also stated that he had seen the Defendant in possession of two (2) pounds of methamphetamine, on one occasion, at a residence in Duluth.  Id.

- 6 -

Nordberg attested that he later received additional information from the Duluth Police Department. Id. More specifically, Nordberg learned that, on March 2, 2007, Birk was arrested by a Duluth police officer for selling methamphetamine. Id. In a subsequent police interview, Birk admitted that the Defendant was his source for methamphetamine, and he stated that he had been introduced to the Defendant by Curry and Boder. Id. Birk further admitted that he had obtained more than one (1) pound of methamphetamine from the Defendant since May of 2006, and he stated that the Defendant was also supplying methamphetamine to Gray, Gossett, and Kevin Mosier. Id.

In addition, Nordberg learned that, on March 6, 2007, Amanda Lee ("Lee") was arrested by a Duluth police officer for selling methamphetamine. Id. During a subsequent police interview, Lee admitted that her methamphetamine source was the Defendant, and that she typically purchased between one (1) and four (4) ounces, at a time, from the Defendant. Id. Lee also stated that she was introduced to the Defendant through either Curry or Boder. Id.

Nordberg also averred that, based upon his training and experience in law enforcement, and particularly narcotics investigations, he is aware that drug transactions commonly involve cash, that drug dealers do not report their income for

tax purposes, and that money earned from drug deals "is often revealed through deposits of cash into savings or checking accounts, or other cash-type accounts." Id., Application at 1-2.  Nordberg further averred that drug dealers make use of "banks and their attendant services, cashier's checks, money orders, safety deposit boxes, real estate, automobiles, personal property, and [real and/or fictitious] businesses," in an effort to "legitimize their profits from the sale of drugs." Id.  Further, Nordberg attested that law enforcement can "compare one's lifestyle with one's reported income" through an examination of financial records.  Id.

Nordberg further attested that he had spoken with a Pawn America representative, who advised that Pawn America issues re-loadable debit cards at their stores, which are known as Cash Pass cards.  Id., Application at 1-3.  The Pawn America representative further advised that the Cash Pass cards are processed by MetaBank, which is located in Sioux Falls, South Dakota. Id.  Accordingly, Nordberg attested to his belief, that the Defendant's financial records, dating from January 1, 2005, could reveal evidence of the Defendant's methamphetamine distribution business. Id.

Again, as we have noted, the Grand Casino Mille Lacs Search Warrant was issued by a State Court Judge, in Mille Lacs County, on April 23, 2008, see, Exhibit

1, while the Grand Casino Hinckley Search Warrant was issued by a State Court Judge, in Pine County, on April 1, 2008 (collectively, the "Casino Search Warrants"). See, Exhibit 2. Each of the Casino Search Warrants authorized a search for financial information in the name of the Defendant, including "the type of account, the account number, date of opening, date of closing and associated addresses and telephone numbers for the account holder(s)." See, Exhibit 1, Warrant at 2-1.[3] The Casino Search Warrants also authorized a search for "[a]ll financial activity related to Players Club accounts, financial tracking on game play, hotel stay information, Credit Card, Debit or Check Card transactions pertaining to the above referenced accounts beginning on the date the account was opened through the present date." Id.

In support of the Casino Search Warrants, Nordberg submitted Applications and Affidavits which set forth the reasons that caused him to believe that evidence of criminal activity would be found in the Defendant's financial records. Id., Application at 1-1. In large part, the Casino Search Warrants are identical to the MetaBank Search Warrant, which was issued on September 27, 2007. Id., Application at 1-2 to 1-3.

---

[3]Because Exhibits 1 and 2 are nearly identical, but for the location of the records at issue, we cite only to Exhibit 1 in discussing the Casino Search Warrants, except where otherwise noted.

However, in addition to those facts, the Applications for the Casino Search Warrants

include the following statement, by Nordberg:

> 9.      Your affiant has received information from witnesses
> and coconspirators who stated [that the Defendant]
> routinely gambled at various casinos throughout the State
> of Minnesota.   Witnesses have also indicated [that the
> Defendant's] gambling habits have caused him to fall out
> of favor with his sources for methamphetamine.  Witnesses
> have stated [that the Defendant] had gambled and lost
> money which was to be paid to his sources for
> methamphetamine, putting [the Defendant] in significant
> debt to his sources.

Id., Application at 1-3.

In the Application for the Grand Casino Hinckley Search Warrant, which is dated

April 1, 2008, Nordberg also states as follows:

> 10.   Your affiant received information from **three**
> casinos, **Black Bear Casino, Treasure Island Casino and
> Mystic Lake Casino**[,] indicating [that the Defendant]
> gambled ten[s] of thousands of dollars at the casinos.
> During this investigation not one single witness or
> coconspirator [sic] has indicated [that the Defendant] has
> any legitimate source of income.

Exhibit 2, Application at 1-3 [emphasis added].

By comparison, in the Application for the Grand Casino Mille Lacs Search Warrant,

which is dated April 23, 2008, Nordberg states as follows:

> 10.   Your affiant received information from **five** casinos,
> **Black Bear Casino, Treasure Island Casino, Fortune**

> **Bay Casino, Grand Casino Hinckley and Mystic Lake Casino** indicating [that the Defendant] gambled ten[s] of thousands of dollars at the casinos.   During this investigation not one single witness or coconspirator [sic] has indicated [that the Defendant] has any legitimate source of income.

Exhibit 1, Application at 1-3 [emphasis added].

Again, Nordberg averred that, based upon his training and experience in law enforcement, and particularly narcotics investigations, he is aware that drug transactions commonly involve cash, that drug dealers do not report their income for tax purposes, and that money earned from drug deals "is often revealed through deposits of cash into savings or checking accounts, or other cash-type accounts." Id. Accordingly, Nordberg attested to his belief, that the Defendant's financial records, which relate to the Defendant's gambling transactions, could reveal evidence of the Defendant's methamphetamine distribution business.

## III.  Discussion

On this Record, the Defendant challenges all three (3) Search Warrants as violating the Fourth Amendment.  The analysis which follows is unaided by any pre- or post-Hearing briefing, or by any specific recitation, during the course of the Hearing on the Motion, as to any purported deficiencies in the Warrants at issue.  Of course, our obligation is to independently assess the legitimacy of the Warrants, and

- 11 -

to undertake our own independent research, and so, we turn to consider whether the Search Warrants issued without an adequate showing of probable cause, or upon impermissibly stale information.

The Question of Probable Cause and Staleness.

A.     Standard of Review. In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral, and detached Judicial Officer, will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband. See, Warden v. Hayden, 387 U.S. 294 (1967); United States v. Johnson, 64 F.3d 1120, 1126 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996). In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband, or evidence of a crime, will be found in a particular, designated place. See, United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995); United States v. Tagbering, 985 F.2d 946, 949 (8th Cir. 1993). For these purposes, probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal

rules." Illinois v. Gates, 462 U.S. 213, 232 (1983); see also, Ornelas v. United States, supra at 695.

"Search warrant '[a]pplications and affidavits should be read with common sense and not in a grudging hyper technical fashion.'" United States v. Ryan, 293 F.3d 1059, 1061 (8th Cir. 2002), quoting United States v. Goodman, 165 F.3d 610, 613 (8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999).   In conducting such an examination, the Court should review the Affidavits as a whole, and not on a paragraph-by-paragraph basis. See, United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991); Technical Ordnance, Inc. v. United States, 244 F.3d 641, 649 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002).  Moreover, the reviewing Court must not engage in a de novo review but, rather, should accord great deference to the decision of the Judicial Officer who issued the Warrant.  See, United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995); United States v. Curry, 911 F.2d 72, 75 (8th Cir. 1990), cert. denied, 498 U.S. 1094 (1991).  This mandated deference to the determination of the issuing Judicial Officer is consistent with the Fourth Amendment's sound preference for searches that are conducted pursuant to Warrants.  See, Illinois v. Gates, supra at 236.

2.    Legal Analysis.

- 13 -

a)      The MetaBank Search Warrant.  As a threshold matter, we

recognize that much of the information supporting the MetaBank Search Warrant

came from known informants, who were also suspected of criminal activity -- namely,

Klink, Polaski, Curry, Boder, Lee, and Birk.  In addition, Nordberg obtained limited,

generic information from confidential informants, beginning in 2005.  When probable

cause for an arrest is based upon information provided by an informant, "'a key issue

is whether that information is reliable.'"  United States v. Koons, 300 F.3d 985, 993

(8th Cir. 2002), quoting United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998);

see also, United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)("[T]he

informant's reliability, veracity, and basis of knowledge are relevant considerations --

but not independent, essential elements -- in finding probable cause.").  As our Court

of Appeals has stated:

> In [Illinois v.] Gates, the Supreme Court explained that an
> informant's reliability and basis of knowledge "are better
> understood as relevant considerations in the totality-of-the-
> circumstances analysis that traditionally has guided
> probable-cause determinations:  a deficiency in one may be
> compensated for, in determining the overall reliability of a
> tip, by a strong showing as to the other, or by some other
> indicia of reliability." * * * 462 U.S. at 233, 103 S.Ct. at
> 2329.

United States v. Olson, 21 F.3d 847, 850 (8th Cir. 1995).

As a result, "'an informant's basis of knowledge [is] an important consideration, but not a rigid requirement, in the probable cause determination.'"  Id., citing United States v. Anderson, supra at 615.

Consequently, the "core question" is whether the information, which had been provided by the informant, was reliable.  See, United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable."). Moreover, "[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause." United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998).  In turn, an informant is deemed reliable when his/her statements are corroborated by independent evidence. See, United States v. Carpenter, 341 F.3d 666, 669 (8th Cir. 2003) ("[C]orroboration of minor, innocent details may support finding of probable cause."), citing United States v. Tyler, 238 F.3d 1036, 1039 (8th Cir. 2001); see also, United States v. Koons, supra at 993 ("'Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence.'"), quoting United States v. Fulgham, supra at 401; United States v. Formaro, 152 F.3d 768, 770 (8th Cir. 1998)("[C]orroboration

- 15 -

of the confidential informant's information by independent investigation is an important factor in the calculus of probable cause.").

Here, Nordberg avers that he received information from confidential informants, beginning in 2005, about "Mexican Joey," or "Joey," supplying methamphetamine in the Duluth-Superior area. Nordberg offers no other description of the information, or of the confidential informants. Beyond that, Klink, Polaski, Curry, Boder, Lee, and Birk, were the substantial sources of Nordberg's investigation, and those individuals were known to law enforcement. See, United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005), quoting Florida v. J.L., 529 U.S. 266, 270 (2000)("[A] known informant * * * can be held responsible if her allegations turn out to be fabricated.").

We find that the information, which had been provided by those individuals, undergirds our finding that the MetaBank Search Warrant was supported by probable cause. Klink, Polaski, Curry, Lee, and Birk, informed law enforcement that they had each purchased methamphetamine directly from the Defendant, while Boder purchased methamphetamine indirectly, through Gray, and therefore, those individuals had specific knowledge of the facts that they related to Nordberg. In addition, their statements were against their penal interests, as they implicated themselves in the

- 16 -

illegal activities of the Defendant.  See, <u>United States v. Allen</u>, 297 F.3d 790, 794-95 (8th Cir. 2002)("[E]ven though [the informant] had no record as an informant, the information he provided was sufficiently credible both because his statements were against his penal interest and because the police were able to corroborate some of the information he provided."), citing <u>United States v. Tyler</u>, supra at 1039.

The information provided by those individuals also provided some corroboration of the information, which Nordberg had received from his confidential informants, beginning just over one (1) year earlier, concerning the distribution of methamphetamine by "Mexican Joey," or "Joey."  In addition, Polaski originally identified Gray, Curry, and Boder, as individuals who were purchasing methamphetamine from the Defendant, and that information was later corroborated by Curry and Boder themselves, as well as by Birk.  As we have noted, even the "corroboration of minor, innocent details may support a finding of probable cause." <u>United States v. Carpenter</u>, supra at 669; <u>United States v. Reivich</u>, supra at 959-60 (same); see also, <u>United States v. Williams</u>, supra at 593 ("If [some] information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.").

Therefore, we conclude that Nordberg justifiably relied upon the information that was provided by Klink, Polaski, Curry, Boder, Lee, and Birk.

Moreover, in his Affidavit, Nordberg averred that, given his training and experience, persons who are involved in the distribution of narcotics often make cash deposits into bank accounts, and their income is not otherwise reported through tax returns. Nordberg also detailed the information which he had received from Polaski, concerning the Defendant's use of Pawn America's Cash Pass account, so as to facilitate his illegal business.  Compare, United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003)(Corroborated information, from informant, concerning defendant's use of business in drug trafficking, "supported the conclusion that there was a fair probability that evidence of drugs would be present" at defendant's business). Accordingly, we find that the information in Nordberg's Affidavit was  sufficient to establish probable cause that the Defendant's financial records would contain evidence of criminal activity, in support of the MetaBank Search Warrant.

We then turn to consider whether the information, which was contained in Nordberg's Affidavit, was impermissibly stale at the time that the MetaBank Search Warrant issued.  It is axiomatic that, at the time a Search Warrant is issued, there must be probable cause to support its issuance.  See, United States v. Ozar, 50 F.3d 1440,

- 18 -

1446 (8th Cir. 1995), cert. denied, 516 U.S. 871 (1995).  Therefore, a lapse of time,

between the observations of a witness and the issuance of a Search Warrant, like a

delay in executing a Search Warrant, "may make probable cause fatally stale."  United

States v. Maxim, supra at 397 [quotations omitted].

  "There is no bright-line test for determining when information is stale," and the

passage of time, alone, is "not always the controlling factor," as other factors, such as

"the nature of the criminal activity involved and the kind of property subject to the

search," are also relevant to the inquiry.  Id., quoting United States v. Koelling, 992

F.2d 817, 822 (8th Cir. 1993); United States v. Rugh, 968 F.2d 750, 754 (8th Cir.

1992); see also, United States v. Chrobak, 289 F.3d 1043, 1046 (8th Cir. 2002); United

States v. LaMorie, 100 F.3d 547, 554 (8th Cir. 1996).  As but one example, when the

Affidavit alleges an "ongoing continuous criminal enterprise, the passage of time

between the receipt of information and the search becomes less critical in assessing

probable cause."  United States v. Rugh, supra at 754.  Therefore, in our analysis, we

must not "simply count[] the number of days between the occurrence of the facts

supplied and the issuance of the affidavit," but must consider any passage of time "in

the context of a specific case and the nature of the crime under investigation."  United

States v. Maxim, supra at 397, quoting United States v. Koelling, supra at 822;

- 19 -

compare, <u>United States v. Maxim</u>, supra at 397-98 (upholding Warrant, which was based upon four-month-old information that the defendant possessed firearms, because firearm enthusiasts tend to retain their weapons for long periods of time); <u>United States v. Rugh</u>, supra at 753-54 (finding good-faith reliance on Warrant, which was based upon sixteen-month-old information that the defendant possessed child pornography, because "pedophiles typically retain child pornography for a long time").

We find that the information, which was included in Nordberg's Affidavit, was not fatally stale. While it is true that the facts, which are recited in the Affidavit, date back several months prior to the execution of the MetaBank Search Warrant, we must consider the "nature of the criminal activity involved and the kind of property subject to the search." See, <u>United States v. Maxim</u>, supra at 397, citing <u>United States v. Rugh</u>, supra at 754. "Where, as here, the supporting affidavit presents a picture of continuing conduct, as opposed to an isolated instance of wrongdoing * * * the passage of time between the last described act and the presentation of the application becomes less significant." <u>United States v. Gigante</u>, 979 F. Supp. 959, 964 (S.D.N.Y. 1997)(holding that a wiretap application was supported by probable cause, even

though most of the information was at least three to five years old)[internal quotations omitted].

Here, Nordberg's Affidavit recounts drug sales, by the Defendant, which were ongoing, and which spanned from March through May of 2007. The presence of a continuing operation lessens the likelihood that the information had become stale. See, United States v. Ozar, supra at 1446 (finding that a Search Warrant was supported by probable cause, where the majority of the information was from two (2) to four (4) years earlier, and the information, which suggested more recent, ongoing criminal activity, was speculative, and noting that "[t]he passage of time is less significant when there is cause to suspect continuing criminal activity"); United States v. Williams, 897 F.2d 1034, 1039 (10th Cir. 1990)(holding that probable cause supported the Search Warrant, even though some of the information in the Affidavit was four (4) years old, where the defendant was connected to an "ongoing conspiracy spanning a number of years"). Furthermore,"[i]n the case of a search of a business for business records or inventory, it is especially true that information does not quickly become stale." United States v. Culp, 1996 WL 596548 at *2-3 (N.D.N.Y. 1996), citing Andresen v. Maryland, 427 U.S. 463, 478 n. 9 (1976); United States v. Glass Menagerie, Inc., 721 F. Supp. 54, 58-59 (S.D.N.Y. 1989)(holding that two and a half

(2½) year old information supported a probable cause finding, because the search was of an ongoing business, and written records were likely to exist).  We conclude that the same would seem likely with respect to a search for financial records, at a financial institution.

Here, the evidence being sought in the MetaBank Search Warrant was solely financial documents.  Thus, it was likely that the Defendant's financial records were still maintained at MetaBank in September of 2007, when the Search Warrant issued, and the information in the Affidavit, which related to events that occurred from March to May of 2007, was not fatally stale.  See, United States v. Cherna, 184 F.3d 403, 410 (5th Cir. 1999)("Although many of the misrepresentations described in [the] affidavit took place * * * one to two years" prior to the application for the Search Warrant, "we cannot say that [the] affidavit was based on stale information," because the businesses were ongoing, and "financial records typically are retained for long periods of time."); United States v. Brownderville, 187 F.3d 638, 1999 WL 618067 (6th Cir., August 2, 1999)[Table Disposition](finding probable cause to support a Search Warrant, where the information established that the defendant's gross proceeds on his tax returns filed for the previous two to four years, were significantly lower than what they should be, because, inter alia, "the crime was ongoing and the evidence was not likely to have

disappeared," and the "defendant's doctoring of his business records to understate his income was an established practice.").

Here, after considering the totality of the circumstances, and after applying a practical, common sense reading to Nordberg's Affidavit, we find that the State Court Judge was provided with substantially more than a reasonable likelihood to believe that the Defendant's financial records would reveal evidence relating to his alleged drug distribution business. Accordingly, we conclude that the MetaBank Search Warrant was issued upon a proper showing of probable cause.

As a final matter -- and an important one at that -- we note that MetaBank is located in Sioux Falls, South Dakota, while the Search Warrant was issued by a State Court Judge in Minnesota. Under Minnesota law, "[s]earch warrants may be issued by any court * * * having jurisdiction in the area where the place to be searched is located." Minnesota Statutes Section 626.06; see also, Minnesota Statutes Section 626.11 ("If the judge is satisfied of the existence of the grounds of the application, or that there is probable cause to believe their existence, the judge must issue a signed search warrant, naming the judge's judicial office, to a peace officer inside or outside the officer's jurisdiction."). This proposition is confirmed by Minnesota Statutes Section 626.13, which states that "[a] search warrant may in all cases be served

- 23 -

**anywhere within the issuing judge's jurisdiction** by any of the officers mentioned in its directions, but by no other person, except in aid of the officer on the officer's requiring it, the officer being present and acting in its execution."  [Emphasis added].

Here, it appears that the State Court Judge, who issued the MetaBank Search Warrant, exceeded his territorial jurisdiction by authorizing the seizure of financial records from an institution in South Dakota.  However, Minnesota Courts have held that, even if the issuance or execution of a Search Warrant violates statutory law, the exclusionary rule only applies where the violation is "of a constitutional nature." State v. Lien, 265 N.W.2d 833, 841 (Minn. 1978)(finding that police officers failed to make a sufficient showing to justify a nighttime search, under Minnesota Statutes Section 626.14, but declining to exclude evidence), overruled on other grounds, Richards v. Wisconsin, 520 U.S. 385, 388 (1997); State v. Morris, 1997 WL 559739 (Minn.App., September 9, 1997), rev. denied (Minn., October 31, 1997)("[E]ven if the execution of the search warrant outside the trial judge's venue is a statutory violation [under Minnesota Statutes Section 626.06], it is, at most, a minor defect or technical violation."); State v. Lunsford, 507 N.W.2d 239, 243 (Minn.App. 1993), rev. denied (Minn., December 14, 1993)(observing that "[a] search warrant * * * derives its authority from that of the issuing magistrate," but refusing to exclude evidence for a

violation of Minnesota Statutes Section 626.11, where "[n]o constitutional violation is alleged[.]"); compare, <u>United States v. Freeman</u>, 897 F.2d 346, 348 (8th Cir. 1990)(observing that the agent who applied for the Search Warrant was not authorized to do so, but refusing to exclude evidence for "procedural violations which do not implicate the constitutional values of probable cause or description with particularity of the place to be searched and items to be seized").

The law of this Circuit is not to the contrary. As the Court explained, in <u>United States v. Bach</u>, 310 F.3d 1063, 1066 (8th Cir. 2002), cert. denied, 538 U.S. 993 (2003):

> It also appears that the state officers executing the search violated Minnesota Statute section 626.13. Even so, such a violation would not warrant suppression of the evidence gained because federal courts in a federal prosecution do not suppress evidence that is seized by state officers in violation of state law, so long as the search complied with the Fourth Amendment. United States v. Moore, 956 F.2d 843, 847 (8th Cir. 1992); [United States v.] Appelquist, 145 F.3d [976,] 978 [(8th Cir. 1998)].

In <u>Bach</u>, the Court confronted a Minnesota Search Warrant, which was served, by fax, upon an internet provider in the State of California. Apparently, the law of California allows the service of a Search Warrant by fax, <u>id.</u> at 1065, citing <u>California Penal Code Section 1524.2</u>, so the extra-territorial service of the Warrant was not challenged

- 25 -

in Federal Court.[4]   However, the Court determined that the Warrant violated

Minnesota Statutes Section 626.13, since it was executed by the employees of the

internet provider, and not by law enforcement officers, as that Section requires.

Nonetheless, our Court of Appeals had no hesitation in concluding that, so long as the

Warrant did not violate the Fourth Amendment's guarantees, it was valid in a Federal

prosecution though it failed to comply with State law which is applicable to such

Warrants.

Accordingly, assuming that the issuance of the MetaBank Search Warrant

violated Minnesota Statutes Section 626.06, and 626.13, we find no basis to apply the

exclusionary rule, based upon the cases we have cited.  We find further support for our

conclusion, in the analogous considerations of the jurisdiction of a United States

---

[4]In a State Court prosecution, the defendant, in Bach, did challenge the extra-territorial service of the Search Warrant, but the Minnesota Court of Appeals elected not to address the validity of that Warrant.  See, State v. Bach, 2003 WL 22290411 at *7 (Minn.App., October 7, 2003).

Given the application of the California Penal Code, in United States v. Bach, 310 F.3d 1063, 1066 (8th Cir. 2002), cert. denied, 538 U.S. 993 (2003), we questioned whether the law of South Dakota likewise permitted the extra-territorial service of a Search Warrant, given the issuance of that Warrant by a respected Minnesota District Court Judge, but we have concluded that it does not.  See, e.g., State v. Wilson, 618 N.W.2d 513, 519-520 (S.D. 2000)(Judge in one judicial circuit is not empowered to issue a Search Warrant for execution in a different judicial circuit).

Magistrate Judge which, as a general proposition, is limited to the District in which he or she sits. See, Title 28 U.S.C. §636; Rule 41(b)(1), Federal Rules of Criminal Procedure ("[A] magistrate judge with authority in the district * * * has authority to issue a warrant to search for and seize a person or property located within the district."); United States v. Strother, 578 F.2d 397, 399 (D.C. Cir. 1978)(citing "[t]he general principle that a judicial officer's writ cannot run outside her territorial jurisdiction[.]"); United States v. Bailey, 193 F. Supp.2d 1044, 1051 (S.D. Ohio 2002)("[A] judicial officer in one district is generally without authority to issue a search warrant for property in another district."); see also, United States v. Comprehensive Drug Testing, Inc., 473 F.3d 915, 921 n. 9 (9th Cir. 2006)(noting that law enforcement sought search warrants from magistrate judges in both Nevada and California, and that such "pursuit of search warrants in different districts was proper" under Rule 41(b), Federal Rules of Criminal Procedure); United States v. Ramirez, 146 Fed.Appx. 518, 520 (2nd Cir. 2005)(in criminal investigation, where Search Warrants were sought for offices in New Jersey, and in New York, Warrants were issued by two (2) different Magistrate Judges in two (2) different jurisdictions).

However, even where Rule 41 is technically violated, exclusion is not an automatic remedy. See, United States v. Cassidy, 532 F. Supp. 613, 617 (D.C.N.C.

1982)("Assuming arguendo that Judge Britt lacked authority to issue the search warrant resulting in a violation of Rule 41 [based on the defendant's argument that the Judge was from another District], the violation nonetheless does not warrant suppression of the evidence."); <u>United States v. LaFountain</u>, 252 F. Supp.2d 883, 891 (D. N.D. 2003)(denying Motion to Suppress where a Search Warrant was issued by an unauthorized Judge in violation of Rule 41, when there was "no evidence that the search warrants would not have been issued otherwise.").

Instead, under the law of our Circuit, when faced with a violation of Rule 41, we first look to whether the violation was fundamental, or nonfundamental, under the analysis identified in <u>United States v. Luk</u>, 859 F.2d 667, 671 (9th Cir. 1988), and adopted by our Court of Appeals in <u>United States v. Freeman</u>, supra at 350, as follows:

> [A] violation is "fundamental" only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards. Violations of Rule 41 which do not arise to constitutional error are classified "non-fundamental."

Here, Minnesota State Courts have adopted a similar analysis for violations of its statutory law, as it relates to Search Warrants, including Section 626.06. As we have previously detailed, our review of the MetaBank Search Warrant has revealed no

- 28 -

violation which rises to the level of constitutional import.  The Warrant was constitutionally sufficient, since it was supported by probable cause to believe that a search of the Defendant's financial records at MetaBank would result in the discovery of evidence of criminal activity, and the Affidavit established a sufficient nexus, between the Defendant and MetaBank, by way of Pawn America's Cash Pass program.  Accordingly, any violation of Section 626.06 was of a non-fundamental nature, and suppression is not automatically required.

In addition, we find no basis, on this Record, to conclude that the Defendant suffered any prejudice, or that law enforcement intentionally and deliberately disregarded the statute.  See, United States v. Schroeder, 129 F.3d 439, 443-44 (8th Cir. 1997)("[I]n determining whether suppression is warranted under the [analogous] Arkansas rule we should apply the same standard that our sister circuits have applied under the federal rule," i.e., whether there has been "a showing of prejudice or deliberate disregard of the rule[.]")[citations omitted]; see also, United States v. Freeman, supra at 348-49, and United States v. Burgard, 551 F.2d 190, 193 (8th Cir. 1977).

Rather, the presence of probable cause for the issuance of the Warrant adequately demonstrates that the same Warrant would have been issued by a State

Court Judge, with unquestioned jurisdiction to do so, in Sioux Falls, South Dakota, if the Warrant had been presented for that Judge's review.  See, <u>South Dakota Codified Laws Section 23A-35-2</u> ("A search warrant authorized by this chapter may be issued by a committing magistrate in the county where the property sought is located, on the request of a law enforcement officer or prosecuting attorney."); <u>South Dakota Codified Laws Section 23A-35-4</u> ("If the committing magistrate is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he **shall** issue a warrant identifying the property to be seized and naming or describing the person or place to be searched.")[emphasis added].

Moreover, there is not the slightest intimation that the State Court Judge, Nordberg, or any other officer, engaged in an intentional or deliberate attempt to circumvent the requirements of Section 626.06, or otherwise acted in bad faith. Compare, <u>United States v. Berry</u>, 113 F.3d 121, 123 (8th Cir. 1997)("[B]ecause no evidence exists that the officers acted in bad faith, it follows that there was no reckless disregard of proper procedure."), quoting <u>United States v. Bieri</u>, 21 F.3d 811, 816 (8th Cir. 1994), cert. denied, 513 U.S. 878 (1994), citing, in turn, <u>United States v. Hyten</u>, 5 F.3d 1154, 1157 (8th Cir. 1993)("[O]ur prior determination that [the officers] acted in good faith precludes any finding of deliberate disregard of proper procedure on

their part.").  Indeed, if the Defendant knew of any specific basis to attack the issuance of the Warrant in this State, for service in the State of South Dakota, we are confident that the basis would have been particularized at the time of the Hearing, with appropriate factual support and legal briefing.  In point of fact, our close inquiry, arising from the generic submission of the Motion to Suppress on the "four corners" of the Warrant, and its supporting papers, prompted our exploration of that issue.

In sum, we find that the MetaBank Search Warrant was properly supported by probable cause, and we find no other basis upon which to recommend that the Defendant's financial records be suppressed.  Therefore, we recommend that the Defendant's Motion to Suppress Evidence be denied, insofar as it relates to the MetaBank Search Warrant.[5]

---

[5]Furthermore, we would be compelled, by the law of this Circuit, to find that the officers' reliance upon the Search Warrant was reasonable, because it "was not so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon."  United States v. McNeil, 184 F.3d 770, 775 (8th Cir. 1999), citing United States v. Leon, 468 U.S. 897, 922-23 (1984).  Here, acting independently, a respected Minnesota District Court Judge, with past experience in Minnesota's criminal law, concluded that the MetaBank Warrant was lawful, and we could not reasonably expect law enforcement officers to assess the lawfulness of the Warrant differently.  See, State v. Morris, 1997 WL 559739 (Minn.App., September 9, 1997) (Even if the issuing Court were only empowered "to permit a search in the county where the judge was sitting," under Minnesota Statutes Section 626.11, "[t]he police officer acted in this case in reliance on the act of the issuing judge.").

b)      <u>The Casino Search Warrants</u>.   Turning to consider the Casino Search Warrants, we note that Nordberg's Affidavit, which was dated April 1, 2008, and which was offered in support of the Grand Casino Hinckley Search Warrant, makes absolutely no mention of that casino.   Instead, Nordberg mentions that he has "received information from three casinos, Black Bear Casino, Treasure Island Casino and Mystic Lake Casino[,] indicating [that the Defendant] gambled ten[s] of thousands of dollars at the casinos."   <u>Exhibit 2</u>, Application at 1-3.   Similarly, Nordberg's Affidavit, which was dated April 23, 2008, and which was offered in support of the Grand Casino Mille Lacs Search Warrant, makes no direct mention of that casino.   Instead, Nordberg avers that he had "received information from five casinos, Black Bear Casino, Treasure Island Casino, Fortune Bay Casino, Grand Casino Hinckley and Mystic Lake Casino indicating [that the Defendant] gambled ten[s] of thousands of dollars at the casinos."   <u>Exhibit 1</u>, Application at 1-3.   Although the later Application mentions Grand Casino Hinckley -- presumably because the Grand Casino Hinckley Search Warrant had, at that point, been executed -- it does **not** mention Grand Casino Mille Lacs.

"[T]here must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue."   <u>United States v. Tellez</u>, 217 F.3d

547, 550 (8th Cir. 2000). To sustain that nexus, the Application for the Search Warrant need only establish a "fair probability" that the named contraband would be found in a particular place, based on the circumstances described in the Application. Id. at 549; see also, United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) ("Probable cause requires 'only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"), quoting Illinois v. Gates, supra at 243-44 n. 13. Here, however, Nordberg's Affidavit, in support of the Grand Casino Hinckley Search Warrant, is devoid of any allegation concerning a connection between the Defendant, and that Casino, and the same is true of Nordberg's Affidavit in support of the Grand Casino Mille Lacs Search Warrant. Moreover, Nordberg states only that "witnesses and coconspirators" had informed him of the Defendant's gambling habit. See, Exhibit 1, Application at 1-3; Exhibit 2, Application at 1-3. He does not identify which witnesses, or co-conspirators, provided that information.

"Viewing the cumulative effect of these infirmities, as we must, we see a series of unrelated shortcomings that may demonstrate an absence of probable cause." United States v. Carpenter, supra at 670. Nonetheless, we conclude that suppression would be improper under the "good faith exception" that was articulated in United States v. Leon, 468 U.S. 897, 922 (1984); see also, United States v. Carpenter, supra

at 670 ("We also see, however, that the cumulative effect of the information set forth in the affidavit provides an adequate basis for finding that Officer Shoemaker's reliance was reasonable.").[6]  Under Leon, the exclusionary rule does not apply to evidence that is discovered through the execution of a subsequently invalidated Search Warrant, so long as the officer's reliance on the Warrant was objectively reasonable. Id.  The Leon Court went on to identify four situations in which an officer's reliance on a Warrant would be unreasonable:

> (1)   the affiant included information in the affidavit that he "knew was false or would have known was false except for his reckless disregard of the truth" and that information misled the issuing judicial officer;
>
> (2)   the issuing judge abandoned his neutral judicial role;
>
> (3)   the warrant was based on an affidavit with so few indicia of probable cause that an official belief in its validity would be unreasonable; and

---

[6]Having found that the good faith exception applies, we need not resolve the issue of whether the Search Warrant Affidavit provided a substantial basis for the issuing Judicial Officer's determination that probable cause was present to support the Casino Search Warrants.  See, United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008)("[B]efore reviewing the existence of probable cause, we may consider the applicability of the good-faith exception to the exclusionary rule * * * ."), quoting United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007); United States v. Carpenter, 341 F.3d 666, 669 (8th Cir. 2003)("[C]ourts [may] reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith."), quoting United States v. Leon, 468 U.S. 897, 925 (1984).

> (4)     the warrant itself was so "facially deficient * * * that the executing officers" could not reasonably rely on its validity.

United States v. Simpkins, 914 F.2d 1054, 1057 (8th Cir. 1990), cert. denied, 498 U.S. 1101 (1991), citing United States v. Leon, supra at 923.

Here, there is not the slightest suggestion that there was any "reckless disregard for the truth," or that the issuing Judicial Officer was less than neutral in issuing the Warrant to search the Defendant's financial records at Grand Casino Hinckley, and Grand Casino Mille Lacs.  Nor do we find any basis for an assertion that the Warrants were "facially deficient," in terms of the place to be searched, or the records to be seized.  Consequently, we turn to Nordberg's Affidavits, and the Casino Search Warrants themselves, in order to determine whether the Warrants were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  United States v. Leon, supra at 923.

In applying the "so lacking" standard, our Court of Appeals has recognized that "'[e]ntirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in Leon or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words."  United States v. Carpenter, supra at 670.  As such, "good faith may exist when a minimal nexus between the place to be searched and the suspected criminal activity is established."

See, United States v. Gonzalez, 399 F.3d 1225, 1231 (10th Cir. 2005), citing United

States v. Carpenter, 360 F.3d 591, 596 (6th Cir. 2004). This is necessarily a minimal

standard, as "[o]rdinarily, a police officer cannot be expected to question a judge's

probable cause determination." United States v. Gibson, 928 F.2d 250, 253 (8th Cir.

1991); see, e.g., United States v. Van Shutters, 163 F.3d 331, 336-38 (6th Cir. 1998)

(finding that the "good faith" exception applied even where the Supporting Affidavit

"completely neglect[ed] to indicate why the affiant believed that [the defendant]

himself had any connection with the" residence in the Search Warrant); United States

v. Carpenter, supra at 595-96 (Supporting Affidavit was not "completely devoid" of

a nexus, where it noted that marijuana was growing near the residence, and that there

was a path from the residence to the location of the marijuana).

However, the "good faith" exception may not apply where the Supporting

Affidavit completely fails to explain any connection between the place to be searched,

and the suspect, or the suspected criminal activity. See, e.g., United States v.

Gonzalez, supra at 1231 (finding "good faith exception to be inapplicable where the

Supporting Affidavit "completely fail[ed] to explain why the detective believed that

the items sought would be found at" the place to be searched); United States v. Hove,

848 F.2d 137, 139-40 (9th Cir. 1988)(finding that "good faith" exception did not apply

where the Supporting Affidavit failed to link place to be searched to the defendant, or explain why the officers believed that incriminating evidence would be found there).

Here, we are satisfied that the Affidavits presented at least a "minimal nexus" between Grand Casino Hinckley, Grand Casino Mille Lacs, and the Defendant. Specifically, Nordberg attested that he had received information from witnesses, and co-conspirators in this action, that the Defendant had a serious gambling habit, and that he frequented "various casinos throughout the State of Minnesota."  This information was corroborated after Nordberg contacted other casinos in the area, and received information which confirmed the Defendant's predilection for gambling large sums of money.  See, United States v. Koons, supra at 991 (applying good-faith exception, after observing that "[a] bare bones affidavit is one which relies on uncorroborated tips, or mere suspicion, but the affidavit in this case involved a corroborated tip")[citations omitted].  In view of the geographic proximity of the Grand Casinos in Hinckley, and in Mille Lacs, with the Defendant's presence in Duluth, it is no stretch to believe that he frequented those casinos.

As such, it was objectively reasonable for Nordberg to rely on the determination of **two (2) issuing Judicial Officers**, who independently reviewed the averments in support of the Warrants' issuance, and concluded that evidence relating to the

- 37 -

Defendant's alleged illegal income would be found in financial records at local casinos, other than those specifically identified in the respective Applications.  See, United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008)("[W]e have held that an officer executing a search warrant may rely in the permissibility of the issuing judge's inference that such a nexus exists when that inference has 'common sense appeal[.]'"), quoting United States v. Carpenter, supra at 671-72; United States v. Hallam, 407 F.3d 942, 946 (8th Cir. 2005)("[T]he affidavit, while scant, was not so utterly lacking in facts as to render Trooper Rutledge's belief that it established probable cause 'entirely unreasonable.'"); United States v. Koons, supra at 991 ("It was not objectively unreasonable for the officers to proceed to execute the warrant in these circumstances where there was evidence to corroborate the tip and where an independent magistrate had found that the affidavit stated probable cause.").

Since, in our judgment, the Affidavits contained sufficient information to explain why Nordberg believed that the Defendant's financial records would contain evidence of criminal activity, the absence of a more precise connection, between the Defendant's gambling activity, which was described in Nordberg's Affidavits, and either Grand Casino Hinckley, or Grand Casino Mille Lacs, does not compel the exclusion of the evidence that was uncovered during the execution of the Casino

Search Warrants.  As we have previously detailed, Nordberg had reason to believe that the Defendant was engaged in the ongoing sale of methamphetamine, and that he was using the proceeds of his drug sales to fund a serious gambling habit in local casinos. It was objectively reasonable for Nordberg to rely on the determination of the issuing Judicial Officer, that evidence of the Defendant's unlawful income would be found in his financial records at Grand Casino Hinckley and Grand Casino Mille Lacs. Therefore, we find that the requested suppression of the evidence, which was obtained during the execution of the Casino Search Warrants, would be improper under the good faith exception that was articulated in <u>Leon</u>.

In sum, we recommend that the Defendant's Motion to Suppress Evidence Secured in Violation of the Fourth Amendment, be denied, in its entirety.

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Defendant's Motion to Suppress Evidence Secured in Violation of the Fourth Amendment [Docket No. 49] be DENIED.

2.      That the Defendant's Motion to Suppress Evidence Secured in Violation of the Fifth Amendment [Docket No. 50] be DENIED as moot.

3.      That the Defendant's Motion to Suppress Evidence Secured in Violation of the Sixth Amendment [Docket No. 51] be DENIED as moot.


Dated:  August 21, 2008                    _s/Raymond L. Erickson_
                                           Raymond L. Erickson
                                           CHIEF U.S.  MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 5, 2008**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 5, 2008**, unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.