## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH CHRIS HERNANDEZ,<br><br>Defendant. | Criminal No. 08-198 (1) (JRT/RLE)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |

Andrew R. Winter, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Robert J. Kolstad, **ATTORNEY AT LAW**, 1005 West Franklin Avenue #3, Minneapolis, MN 55405, for defendant.

This case is now before the Court on defendant Joseph Chris Hernandez's objections to a Report and Recommendation issued by United States Magistrate Judge Raymond L. Erickson. Hernandez filed three motions to suppress evidence, pursuant to the Fourth, Fifth, and Sixth Amendments of the United States Constitution. The Magistrate Judge recommended that each of these motions be denied. Hernandez now objects to the recommended denial of his Fourth Amendment motion.[1] The Court has conducted a *de novo* review of that recommendation, pursuant to 28 U.S.C. § 636 (b)(1)(C) and Local Rule 72.2(b). For the reasons given below, the Court overrules

---

[1] The Magistrate Judge noted that at the hearing on these motions, the prosecution indicated it would not introduce any of the evidence implicated by Hernandez's Fifth Amendment motion or his Sixth Amendment motion. Accordingly, the Magistrate Judge denied those two motions as moot. Hernandez has not objected to those recommendations, and this Court adopts those recommendations without further discussion.

Hernandez's objection and adopts the Report and Recommendation of the Magistrate Judge.

## BACKGROUND

On September 27, 2007, a Minnesota state court judge issued a warrant for a search at MetaBank, a bank in Sioux Falls, South Dakota ("the MetaBank Warrant"). The warrant authorized a search for financial account information and records in Hernandez's name. The information supplied in the warrant application was provided by John M. Nordberg, a special agent with the Minnesota Bureau of Criminal Apprehension ("BCA"). That information is summarized below.

Beginning in 2005, Nordberg began receiving information from confidential informants indicating that Hernandez was involved in drug trafficking. The informants indicated that Hernandez was supplying methamphetamine in Duluth, Minnesota, and Superior, Wisconsin. Later, on March 3, 2007, Nordberg received a report concerning Hernandez from Doug Henning, another BCA agent. Henning had received incriminating information from a former associate of Hernandez. The associate indicated that he had helped collect Hernandez's drug debts and had delivered methamphetamine at Hernandez's direction.

On May 12, 2007, Nordberg interviewed Brandon James Polaski, who claimed to be one of Hernandez's former customers. Polaski indicated that he had purchased six ounces of methamphetamine from Hernandez for distribution in the Duluth-Superior area. Polaski also listed thirteen other individuals who had obtained methamphetamine from Hernandez, including Adrian Gray, Justin Curry, Brian Boder, Dean Gossett, and

"Kevin." Following the interview, Polaski informed Nordberg that Hernandez deposited income from his drug deals into an account at a Pawn America store in Duluth. Polaski explained that Hernandez would use a debit card from this account in order to avoid carrying cash, and indicated that Hernandez's co-conspirators used this account as well.

Nordberg received information from other law enforcement officers that corroborated Polaski's account. On April 26, 2007, Nordberg received a report from Mike Erickson, an investigator with the Duluth Police Department. Erickson had interviewed Curry, one of the Hernandez customers identified by Polaski. Curry admitted purchasing between fifteen and twenty pounds of methamphetamine from Hernandez.

Nordberg also received a report from Shawn Padden, an investigator with the Hermantown Police Department. On March 15, 2007, Padden had interviewed Boder, another Hernandez customer identified by Polaski. Boder identified Hernandez in a photograph and indicated that he had received 1.5 pounds of methamphetamine from Hernandez by way of a third party. Boder also indicated that he had seen Hernandez in possession of two pounds of methamphetamine at a residence in Duluth.

Nordberg received additional information from the Duluth Police Department. On March 2, 2007, Duluth police arrested "Birk," another suspected methamphetamine distributor. Birk later admitted that Hernandez was his source, and indicated that he had been introduced to Hernandez by Curry and Boder. Birk stated that he had received more than one pound of methamphetamine from Hernandez since May 2006, and that Hernandez was also supplying methamphetamine to Gray, Gossett, and Kevin Mosier.

Nordberg also learned that on March 6, 2007, Duluth police had arrested another methamphetamine distributor with links to Hernandez. The distributor, Amanda Lee, indicated that Hernandez was her source, and that he typically sold her between one and four ounces at a time. Lee added that she was introduced to Hernandez through either Curry or Broder.

Nordberg's affidavit also described what his training and experience in law enforcement had taught him about the financial details of drug trafficking. Nordberg noted that drug transactions often involve cash, that drug dealers generally do not report their income for tax purposes, and that money earned from drug deals is often deposited into savings or checking accounts, or other cash-type accounts. Nordberg explained that in drug investigations, it is often useful to examine a suspect's financial records, in order to compare a suspect's financial activities with his or her reported income.

Nordberg spoke with a representative from Pawn America, where Polaski indicated an account was maintained by Hernandez. The Pawn America representative indicated that Pawn America issues re-loadable debit cards, and that information concerning the use of those cards is held by MetaBank in Sioux Falls, South Dakota. Thus, Nordberg believed that Hernandez's financial records at MetaBank would reveal evidence of drug trafficking. On the basis of this information, Nordberg's warrant application was granted.

Later, in April 2008, Nordberg obtained two additional warrants concerning Hernandez. These warrants authorized searches for financial information concerning Hernandez held by Grand Casino Hinckley and Grand Casino Mille Lacs ("the Casino

Warrants"). In his applications for these warrants, Nordberg included nearly all of the information summarized above. Nordberg also added new information, however, concerning Hernandez's gambling activities. Unnamed witnesses and co-conspirators had described Hernandez's excessive gambling throughout Minnesota, and noted that it had led him to lose money owed to his methamphetamine sources. Law enforcement received information corroborating these tips from several specific casinos, which stated that Hernandez gambled tens of thousands of dollars in their facilities.[2] On the basis of this information, Nordberg believed that financial records held by Grand Casino Mille Lacs and Grand Casino Hinckley may contain evidence bearing on Hernandez's drug activities. The first of the Casino Warrants was issued on April 1, 2008, and was executed at Grand Casino Hinckley. The second Casino Warrant was issued on April 23, 2008, and was executed at Grand Casino Mille Lacs.

On June 17, 2008, Hernandez, Gray, and Gossett were indicted on one count of conspiracy to distribute methamphetamine. Hernandez then filed this motion generally requesting that the Court suppress any evidence obtained "as the result of any illegal searches or seizures." (Docket No. 49.) When the Magistrate Judge held a hearing on this motion, neither party offered any testimony, and the only evidence offered into the record were the three search warrants and supporting affidavits described above. (Report and Recommendation at 2.) The Magistrate Judge adds that at the hearing, Hernandez offered no "specific recitation . . . as to any purported deficiencies in the Warrants at

---

[2] The specific casinos named in the April 1, 2008, Grand Casino Hinckley application were Black Bear Casino, Treasure Island Casino, and Mystic Lake Casino. The specific casinos named in the April 23, 2008, Grand Casino Mille Lacs application were Black Bear Casino, Treasure Island Casino, Fortune Bay Casino, Grand Casino Hinckley, and Mystic Lake Casino.

issue." (*Id*. at 11.) Nonetheless, the Magistrate Judge considered a series of hypothetical challenges to the searches at issue, and – in a thorough, forty-one-page Report and Recommendation – concluded that Hernandez's motion should be denied. Specifically, the Magistrate Judge concluded that the MetaBank Warrant was supported by probable cause and that even if the two Casino Warrants were not supported by probable cause, the officers' reliance on those warrants was objectively reasonable. In objecting to those conclusions, Hernandez summarily contends that "[t]he affidavits offered in support of the search warrants executed in this case simply do not establish probable cause and no reasonable officer would rely upon warrants issued pursuant to testimony as found in those affidavits." (Docket No. 71.) In addressing this objection, the Court considers the MetaBank Warrant and the Casino Warrants separately below.

## ANALYSIS

### I.   THE METABANK WARRANT

When presented with an application for a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id*. (alteration in original). Because "reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause," reviewing courts give "great

deference" to a magistrate's determination. *United States v. Leon*, 468 U.S. 897, 914 (1984).

Here, the Court agrees with the Magistrate Judge that the MetaBank warrant application provided more than enough information to supply probable cause for a search. Nordberg's affidavit stated that at least four named individuals admitted purchasing methamphetamine from Hernandez, another admitted purchasing methamphetamine from Hernandez through a third party, and another admitted to delivering methamphetamine and collecting drug debts on Hernandez's behalf. The information provided by these informants was especially credible in light of the fact that their statements were against their penal interests. *See United States v. Allen*, 297 F.3d 790, 794-95 (8th Cir. 2002). In addition, the credibility of these statements is enhanced by the fact that many of these informants corroborated one another. For example, Polaski originally identified Gray, Curry, and Broder as individuals who had purchased methamphetamine from Hernandez. This information was later corroborated by Curry and Broder themselves, as well as by Birk. Moreover, the statements from the individuals named in the affidiavit also corroborated the earlier information that Nordberg received from a confidential informant, alleging that Hernandez was supplying methamphetamine in the Duluth-Superior area. In sum, Nordberg's affidavit was replete with reliable information suggesting that Hernandez was engaged in methamphetamine trafficking in the Duluth-Superior area.

As to the Pawn America account, Polaski – a witness whose statements incriminated him and were repeatedly corroborated – indicated that Hernandez was

depositing drug profits into such an account in Duluth. Based on his training and experience investigating drug trafficking, Nordberg knew that this was a common method for concealing drug proceeds. In those circumstances – and in the absence of any more particularized objections by Hernandez – the Court agrees with the Magistrate Judge that there was more than enough information in Nordberg's warrant application to supply probable cause for a search of Hernandez's financial records at MetaBank. Accordingly, the Court overrules Hernandez's objection, and adopts the Magistrate Judge's denial of his Fourth Amendment challenge to the MetaBank search.

## II.   THE CASINO WARRANTS

In addressing the warrants executed at Grand Casino Hinckley and Grand Casino Mille Lacs ("the Casino Warrants"), the Magistrate Judge first noted several possible deficiencies in these warrants. The Magistrate Judge noted that in both cases, the warrant application did not include information provided by the specific casinos where the warrants were executed. In addition, the tip that Hernandez's gambling had caused him to lose money owed to his methamphetamine sources was generically attributed to witnesses and co-conspirators, without identifying any of those informants in greater detail. Rather than evaluating whether these potential deficiencies undermined the issuing magistrate judge's probable cause determination, however, the Magistrate Judge considered the applicability of the good-faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984). *See United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006) (noting that where *Leon* applies, "there is no need to visit the underlying question of probable cause"). This Court agrees with the Magistrate

Judge that the good-faith exception is applicable in this case, and that further consideration of whether the warrant application supplied probable cause is unnecessary.

"Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (internal quotation marks omitted).

"*Leon* identified four situations in which an officer's reliance on a warrant would be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." *Id*. at 431 (emphasis and internal quotation marks omitted). Here, the Magistrate Judge indicated that there was "not the slightest suggestion" of any reckless disregard for truth in the assembly of the warrant application or any lack of neutrality on the part of the issuing magistrate judge. The Magistrate Judge also found no basis for a facial challenge to the warrant. Accordingly, the Magistrate Judge focused his analysis on whether the applications supporting the Casino

Warrants were "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* Hernandez has not objected to this narrowing of his motion, and thus this Court confines its analysis to this question as well.

"Ordinarily, a police officer cannot be expected to question a judge's probable cause determination." *United States v. Gibson*, 928 F.2d 250, 253-54 (8th Cir. 1991). Thus, "[a]lthough there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue, . . . an officer executing a search warrant may rely in the permissibility of the issuing judge's inference that such a nexus exists when that inference has common sense appeal." *Perry*, 531 F.3d at 665 (citations and internal quotation marks omitted).

Here, the Court agrees with the Magistrate Judge that the Casino Warrants satisfy this standard. As an initial matter, the warrant applications both contained the information included in the MetaBank application. The numerous consistent accounts of Hernandez's activities provided overwhelming evidence that he was engaged in the trafficking of methamphetamine in the Duluth area. The applications for the Casino Warrants added that witnesses and co-conspirators had indicated that Hernandez gambled throughout Minnesota, and had lost enough money to impact his ability to pay his suppliers. Several Minnesota casinos corroborated this information by indicating that Hernandez lost tens of thousands of dollars in their facilities. Finally, the two casinos where the searches were ultimately performed are both within a reasonable traveling distance from Duluth, where Hernandez's alleged trafficking occurred. In those circumstances, there was at least a "common sense appeal" to the notion that both of the

searched casinos may possess evidence of Hernandez's drug trafficking activities. Accordingly, the Court overrules Hernandez's objection, and adopts the Magistrate Judge's denial of his Fourth Amendment challenge to the Casino searches.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, the Court **OVERRULES** Hernandez's Objection [Docket No. 71] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 67]. **IT IS HEREBY ORDERED** that:

1. Hernandez's Motion to Suppress Evidence Secured in Violation of the Fourth Amendment [Docket No. 49] is **DENIED**.

2. Hernandez's Motion to Suppress Evidence Secured in Violation of the Fifth Amendment [Docket No. 50] is **DENIED as moot.**

3. Hernandez's Motion to Suppress Evidence Secured in Violation of the Sixth Amendment [Docket No. 51] is **DENIED** as moot.


DATED: October 28, 2008         ____s/ John M. Tunheim____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                             United States District Judge